UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Raymond L. Semler,

        Plaintiff,              Case No. 20-cv-1062 (WMW/LIB)

   v.

Nancy Johnston, et al.,         **REPORT AND RECOMMENDATION**

        Defendants.

This matter comes before the undersigned United States Magistrate Judge upon Defendants' Motion to Dismiss. [Docket No. 11]. The present Motion has been referred to the undersigned for the issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). (Order of Reference [Docket No. 17]). The undersigned issued an Order establishing a schedule for the submission of briefs regarding Defendants' Motion to Dismiss, and upon the completion of that briefing, the Court took Defendants' Motion under advisement on the parties' written submissions. (Order [Docket No. 18]).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 11], be **GRANTED**.

**I.    Background**[1]

Plaintiff Raymond Semler (hereinafter "Plaintiff") is currently civilly committed to the Minnesota Sex Offender Program (hereinafter "MSOP"). (Compl., [Docket No. 1], at 1). Plaintiff purports to sue the Defendants in both their individual and official capacities. (See, Id.).

---

[1] The facts contained in this "Background" section are derived from Plaintiff's Complaint, [Docket No. 1], as well as, documents and judicial records implicitly referenced in Plaintiff's Complaint and matters of public record. Generally, in evaluating a complaint, materials outside the pleading cannot be considered on a motion to dismiss. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a Court "may consider the pleadings themselves, exhibits attached to the pleadings, and matters of public record" such as judicial records. See, e.g., Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

Plaintiff brings the present action pursuant to 42 U.S.C. § 1983 alleging generally that Defendants Nancy Johnston (the executive director of the MSOP); James Berg (the Deputy Director of the MSOP); and Marshal Smith (the Health Systems Chief Executive Officer of Direct Care and Treatment for the Minnesota Department of Human Services) violated Plaintiff's constitutional rights in various ways while he has been committed to the MSOP. (See, Id.).

Plaintiff also alleges that Defendants' conduct violated certain provisions of the Cable Communications Policy Act (hereinafter the "Cable Act"). (See, Id.). Plaintiff's Complaint in this regard alleges as follows. According to the allegations in Plaintiff's Complaint, the MSOP for "several years," "funded cable TV through phone and canteen commissions." (Id. at 6). On May 23, 2017, a letter was distributed to MSOP clients informing them that the MSOP had "worked with Minnesota Management and Budget on a new cable contract," but that the price had increased. (Id. at 5). Because the "cable programming [was] funded through canteen commissions" canteen prices were "increased by 9 percent, effective July 1, 2017." (Id.). The letter forewarned the MSOP clients that '[i]f canteen sales do not support cable funding, cable access [will] have to be reconsidered in the future." The letter informed the clients "that the cable contract ha[d] been awarded to Mediacom." (Id.). Plaintiff alleges that this cable contract was between Defendant Johnston and Mediacom for cable to be provided from 2017 to 2022. (Id. at 7–11, 24).

On May 15, 2019, Defendant Johnston, the Executive Director of the MSOP, issued a letter to all MSOP clients to inform them of changes to the "client cable system effective July 1, 2019." (Id. at 6). The May 15, 2019, letter provided that although the MSOP had previously been funding "client cable TV through phone and canteen commissions," a decline in those commissions for the year preceding the May 15, 2019, letter had led to the MSOP having to "fund the cable" bill. (Id. at 6). The letter explained that "budget pressures" had "affected the

2

ability for the MSOP to continue to fund the cost of cable and so effective July 1, 2019; [sic] this funding [would] no longer be available." (Id.). However, "[i]n an effort to maintain cable T.V. each client [was] afforded the opportunity to purchase cable TV at their own expense . . . contingent upon an 85% client participation across both facilities." (Id.). The letter forewarned that "[i]f the participation rate falls below 85%, client cable TV [would] no longer be available and digital local TV channels will be provided." (Id.).

On June 12, 2019, Defendant Johnston disseminated a letter informing the MSOP clients that "[t]here was a little over 40% client interest in participating" in purchasing client cable services, and "[t]herefore, cable [would] not be an option" because there had not been at least 80% participation. (Id. at 7). The June 12, 2019, letter explained that the MSOP would "go forward with using antenna at" its facilities, and it had "installed antennas with boosters at the facilities to obtain as many channels as possible . . . ." (Id.).

On May 16, 2019; May 20, 2019; and May 25, 2019, Plaintiff, among others, sent letters to Defendant Johnston regarding the then-forthcoming discontinuation of cable services. (Id. at 11–15). Plaintiff's letters purported to inform Defendant Johnston that Courts had previously found that the MSOP "could not legally charge clients for" cable; that the "MSOP must be licensed to sell cable through the FCC"; and "that MSOP could not have a contract through a licensed cable provider, split that cable and re-sell it to make a profit." (Id.).

Defendant Johnston sent a responsive letter to Mr. Semler, and other MSOP clients, on May 28, 2019. (Id. at 15–16). Defendant Johnston's May 28, 2019, letter, asserted that there was not a Court order preventing the MSOP from charging clients for cable services, and the MSOP was not "illegally selling cable without a license." (Id. at 16). The letter explained that even if cable services were not continued, the MSOP would still "provide free antenna television to the clients." (Id.).

On July 1, 2019, the MSOP discontinued cable services for clients. (Id. at 17). The MSOP "installed antennas with boosters at its facilities to provide as many broadcast and local channels as possible to clients with Antenna TV" which provides a number of channels including "Antenna TV." (Id. at 20). These channels are provided to MSOP clients free of charge.

On July 19, 2019, Defendant Berg filed, in a separate, unrelated action, a declaration in support of a motion for summary judgment in that separate, unrelated action. See, Stone v. Jesson, 11-cv-951 (WMW/HB), Berg Declaration [Docket No. 150] (D. Minn. July 19, 2019). In that declaration, Defendant Berg attested that the "MSOP [had] funded client cable TV through a client social welfare fund, which derived from [commission] proceeds attained from canteen sales"; however, on August 17, 2017, the canteen vendor used by the MSOP "stopped providing commissions." Id. Defendant Berg further attested that at the time the canteen vendor discontinued providing commissions, the "MSOP and the Department of Human Services Direct Care and Treatment ('DCT') began meeting to discuss alternative funding options to continue client cable. Id. The MSOP and DCT discussed "funding the cable, but this option was not fiscally [possible] because cable vendors declined to modify existing contracts to reduce the $12,000 monthly expense and MSOP and DCT did not have a budget to cover the bill." Id. The "MSOP and DCT also discussed the option of allowing individuals clients to purchase cable," however, the additional staff "required to connect and disconnect cable for clients when they moved rooms, or opted to enroll or cancel" made this option unfeasible. Id. Ultimately, as described above, the MSOP decided to fund 15% of the cable contract and provide the clients with the choice of funding the balance, however, this was contingent on 85% of MSOP clients committing to purchase "cable at a cost of $16.36 per month." Id.

On the basis of the foregoing allegations in his Complaint, Plaintiff here asserts that the Defendants "deprived Plaintiff of his protected First Amendment (Freedom of Speech) rights to

4

the Constitution of the United States." (Compl., [Docket No. 1], at 23). Plaintiff further alleges that Defendants violated at least two provisions of the Cable Act. (See, Id. at 24–25). Plaintiff also appears to assert a claim based on Minnesota state law alleging that Defendants breach their contract for cable services with Mediacom. (See, Id.). Plaintiff seeks both monetary and injunctive relief. (Id.).

## II.     Defendants' Motion to Dismiss. [Docket No. 11].

Defendants' Motion to Dismiss, [Docket No. 11], seeks an Order of this Court dismissing Plaintiff's Complaint in its entirety. Defendants argue that Plaintiff's Complaint should be dismissed because this Court lacks subject matter jurisdiction over portions of Plaintiff's Complaint and because Plaintiff's Complaint fails to state claim upon which relief may be granted. In the alternative, Defendants argue that even if Plaintiff's Complaint could be construed as stating a cognizable, Federal claim, Defendants are entitled to qualified immunity as to each of Plaintiff's claims.

### A. Standard of Review

Pro se complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). While the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, Plaintiff is nevertheless bound by applicable procedural and substantive law. Id.; Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

Title 42 U.S.C. § 1983 establishes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a federal or Constitutional right. 42 U.S.C. § 1983.

### 1. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). "A court must dismiss an action over which it lacks subject matter jurisdiction." Pomerenke v. Bird, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a pleading for lack of subject matter jurisdiction. Such a motion may challenge, at any time, the sufficiency of the pleading on its face or may challenge the factual truthfulness of its allegations. See, Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). To invoke Federal question jurisdiction, a plaintiff must plead facts supporting a cause of action arising under federal law or the United States Constitution. 28 U.S.C. § 1331. A complaint states a federal cause of action when it appears on the face of a well-pleaded complaint. See gen., Oglala Sioux Tribe v. C&W Enterp., Inc., 487 F.3d 1129, 1131 (8th Cir. 2007) (citation omitted).

"A court does not obtain subject-matter jurisdiction just because a plaintiff" purports to raise "a federal question in his or her complaint. If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted) (citing Hagans v. Lavin, 415 U.S. 528, 537–38 (1974)). In other words, merely because a plaintiff states in the complaint that the Court has subject matter jurisdiction does not make it so. See, Id. It is the burden of the party asserting jurisdiction to show that jurisdiction in fact exists. VS Ltd. P'ship. v. Department of Hous. & Urban Dev., 235 F.3d 1109, 112 (8th Cir. 2000).

### 2. Failure to State a Claim

When evaluating a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff."

6

Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level" which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard mere legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81.

Generally, in evaluating a complaint under Rule 12(b)(6), materials outside the pleadings cannot be considered on a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record" such

as judicial records. Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).[2]

### B. Plaintiff's § 1983 Claims

Plaintiff purports to raise various claims against Defendants pursuant to 42 U.S.C. § 1983. To state a claim pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that each individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").[3]

In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right. Section 1983 does not itself grant jurisdiction. Hagens v. Lavine, 415 U.S. 528, 534 (1974).

#### 1. Plaintiff's § 1983 Official Capacity Claims Seeking Monetary Damages

As a threshold jurisdictional consideration, the Eleventh Amendment prohibits an action for monetary damages against a state unless it has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action. Hadley v. North

---

[2] See, Burgs, 745 F.2d at 528 (a pro se plaintiff must still comply with the substantive and procedural law).
[3] Claims premised on a theory of vicarious liability do not state a claim for relief pursuant to 42 U.S.C. § 1983, Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), as the doctrine of respondeat superior does not generally apply in Section 1983 actions. Monnell v. Dep't of Soc. Servs., 436 U.S. 659, 691 (1978).

Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996); Faibish v. University of Minnesota, 304 F.3d 797, 200 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from federal claims brought under Section 1983. Hadley, 76 F.3d at 1438 ("Section 1983 does not override Eleventh Amendment immunity.").

The immunity afforded a state in federal court extends to agencies of the state. Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Florida Dep't of Health & Rehabilitative Sers. v. Florida Nursing Home Ass'n, 450 U.S. 147 (1982)). Similarly, a suit against a state employee in that person's official capacity constitutes a suit against the public employer, namely, the state itself. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999); Kentucky v. Graham, 473 U.S. 159, 165 (1985); Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1119–20 (D. Minn. 2008); Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004). "The law is clear that, 'the real party in interest in an official capacity suit is the governmental entity and not the named official.'" Semler v. Ludeman, No. 9-cv-732 (ADM/SRN), 2010 WL 145275, at *6 (D. Minn. Jan 8, 2010) (citing Baker, 501 F.3d at 925); see, Hafer v. Melo, 502 U.S. 21, 25 (1999). "It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity. A plaintiff may maintain an action against a governmental official if the complaint seeks only injunctive or prospective relief." Semler, 2010 WL 145275, at *7 (citations omitted).

As employees of the MSOP and the Minnesota Department of Human Services, the Defendants are state officials. See, Id.; Daniels v. Jesson, No. 13-cv-736, (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014). The Court, therefore, necessarily construes Plaintiff's alleged Section 1983 official capacity claims against the Defendants as being alleged against the

9

employing entity, i.e., the State of Minnesota. As relief, Plaintiff seeks, among other things, monetary damages.[4]

Liberally construing Plaintiff's Complaint and drawing all reasonable inferences in his favor, the record now before the Court is still devoid of any evidence or authority demonstrating either the State of Minnesota's consent to suit or Congressional abrogation of the state's sovereign immunity.

Therefore, the Court recommends that Plaintiff's § 1983 claims seeking monetary damages as alleged against the Defendants sued in their official capacities be **DISMISSED with prejudice** for lack of subject matter jurisdiction. See, Semler, 2010 WL 145275, at *7 ("[T]o the extent that Plaintiffs seeks monetary damages for actions taken by Defendants in their official capacities, these claims against Defendants are barred by the Eleventh Amendment[.]").

Recommending the dismissal of Plaintiff's § 1983 claims for monetary damages against the Defendants in their official capacities leaves Plaintiff's § 1983 official capacity claims for injunctive and declaratory relief; his § 1983 individual capacity claims for monetary damages, injunctive relief, and declaratory relief; and his claims asserting violations of the Cable Act for the Court's further consideration.

### 2. Plaintiff's Remaining § 1983 Claims

An analysis of Plaintiff's § 1983 claims, requires an examination of the specific purported constitutional right Plaintiff alleges Defendants violated. In the present case, the sole basis alleged for Plaintiff's § 1983 claim is that Defendants denied Plaintiff subsidized cable television. (See, Compl. [Docket No. 1]). Plaintiff does not allege that he was denied access to

---

[4] In the "Introduction" to his Complaint, Plaintiff asserts that he "seeks monetary and compensatory damages against Defendant Johnston, Smith and Berg in their individual capacities only"; however, in his claim for relief, Plaintiff ostensibly appears to seek monetary damages from Defendants in both their official and individual capacities. (See, Compl., [Docket No. 1], at 23–24) (seeking monetary damages without limitation to the Defendants' individual capacities). Therefore, the Court, in an abundance of caution, will construe Plaintiff's Complaint as asserting claims seeking monetary damages against Defendants in their official capacities.

all television programs; indeed, Plaintiff specifically asserts that the MSOP provides him access to several over the air, digital television channels free of charge. (See, Id. at 20). Plaintiff also fails to allege that he was completely prohibited from purchasing cable television. (See, Id.). Rather, Plaintiff specifically avers that the MSOP provided clients the option to purchase cable, however, there was insufficient interest from the clients in purchasing cable television. (See, Id.). Plaintiff also does not allege that he was prevented from viewing any specific channel based on the content of that channel. (See, Id.).

Other than conclusory labels, Plaintiff pleads no facts which support any violation of his federal constitutional rights. (See, Id.). Even liberally construing Plaintiff's Complaint and drawing all reasonable inferences therein in his favor, there is no factual allegation upon which this Court could reasonably infer that Defendants have taken any action which violated Plaintiff's constitutional rights. All that Plaintiff alleges is that the Defendants have failed to provide him with free, state subsidized cable television. Although Plaintiff's Complaint contains repeated conclusorily assertions that Defendants violated his First Amendment right to free speech, no such claim is factually plead.

Plaintiff simply does not have a constitutional right to free, state subsidized cable television. See, e.g., Jannetta v. Minnesota Dept. of Human Services, No. 19-cv-2622 (ECT/TNL), 2020 WL 3405430, at 8 (D. Minn. June 1, 2020), report and recommendation adopted, 2020 WL 3402418 (D. Minn. June 19, 2020). In Jannetta, the Court noted that "there is no reason to believe that the First Amendment requires subsidization of cable television either by [the] MSOP itself or by MSOP clients who might be unwilling to pay for the service." Id. at *8. The Jannetta Court concluded that "Plaintiffs' claims that their constitutional rights were violated when cable television was discontinued at MSOP [were] not viable." Id. "Prisons and other

secure facilities," such as the MSOP "are under no affirmative obligation to provide" detainees with access to "televisions . . . ." Id. at 4.

Plaintiff attempts to point to several cases in support of his argument that he does have a constitutional right to subsidized cable television. (See, Plf.'s Mem., [Docket No. 19], at 9–11) (citing Va. St. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748 (1976); United States v. Playboy Entm't Grp. Inc., 529 U.S. 803 (2000); Turner Broad Sys., Inc. v. F.C.C., 512 U.S. 622 (1994); Ivey v. Johnston, No. 18-cv-1429 (PAM/DTS), 2019 WL 3334346 (D. Minn. July 24, 2019). Each of these cases, however, is inapposite to the issue in the present case. None of the cases highlighted by Plaintiff involved the assertion of a constitutional right to subsidized cable television. Instead, those cases pertain to content-based restrictions on access to specific television content.

For example, Ivey involved two MSOP clients who alleged that the MSOP was preventing access to certain television channels based on the content of those television channels. See, Ivey v. Johnston, No. 18-cv-1429 (PAM/DTS), 2019 WL 3334346 (D. Minn. July 24, 2019). At the time of the circumstances giving rise to the Ivey case, the MSOP still provided subsidized access to cable television for the MSOP clients; however, the "MSOP affirmatively block[ed] access" to certain channels which were included in the MSOP's cable package. Id. at *2. The Ivey Court concluded that, "as a general proposition," the MSOP's "selectively blocking of television channels" was sufficient to support "a cognizable First Amendment violation" where the MSOP allowed access to certain channels while restricting access to certain channels that would have otherwise been available if not for the MSOP's affirmatively restriction. Id. at 6–7.

In the present case, Plaintiff's Complaint is devoid of any allegation of content based restriction of certain channels or any allegation that the MSOP is permitting clients to access

certain cable channels while restricting access to other cable channels that would otherwise be available to view. (See, Compl. [Docket No. 1]). The cases relied upon by Plaintiff simply do not address the claim asserted in the present case.

In summary, the Court concludes that Plaintiff's alleged federal constitutional claim of a violation of his First Amendment right in support of his 42 U.S.C. § 1983 has no basis as plead by Plaintiff in his Complaint. Therefore, Plaintiff's claim of a constitutional violation fails to give rise to Federal question jurisdiction under § 1983.[5] Thus, this Court lacks the requisite subject matter jurisdiction to adjudicate Plaintiff's § 1983 claims as plead.

Therefore, the Court recommends that Plaintiff's § 1983 official capacity claims for injunctive and declaratory relief as alleged against all Defendants, as well as, his § 1983 individual capacity claims for monetary damages, injunctive relief, and declaratory relief as alleged against all Defendants be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

### 3. The Cable Communications Policy Act Claims

Plaintiff also alternatively attempts to raise claims pursuant to the Cable Communications Policy Act of 1984, 47 U.S.C. § 151 et seq. (hereinafter the "Cable Act"). (See, Compl. [Docket No. 1]). Specifically, Plaintiff raises claims pursuant to § 553 and §605 of the Cable Act. (See, Id.).

As observed above, a complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but "[w]here a complaint pleads facts that are 'merely consistent with' a

---

[5] The Court notes that based on the content of the Complaint, there is no basis upon which this Court could alternatively exercise Federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

13

defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57).[6]

### i. 47 U.S.C. § 553

Section 553 of the Cable Act concerns the unlawful interception of cable communications. See, 47 U.S.C. § 553. It provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may be specifically authorized by law." 47 U.S.C. § 553(a)(1). It further provides that "[a]ny person aggrieved by any violation of subsection (a)(1) may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 553(c)(1).

In the present case, Plaintiff wholly fails to plead any factual allegations which raise his § 553 claim above pure speculation much less to the requisite level of plausibility. The only "communications service offered over a cable system" which Plaintiff even alleges Defendants received was the cable services the MSOP received through its previous cable services contract with Mediacom. (See, Compl. [Docket No. 1]). However, Plaintiff repeatedly acknowledges that the MSOP entered into a "contract" with Mediacom to receive cable services. (See, Id. at 7). In fact, Plaintiff purports to have included excerpts from this cable services contract in his Complaint, and those excerpts specifically authorize the MSOP to receive the cable services it received. (Id. at 7–11).[7]

Even liberally construing Plaintiff's Complaint and drawing all reasonable inference therein in Plaintiff's favor, Plaintiff fails to allege the <u>unauthorized</u> reception or interception of

---

[6] See, fn 2, supra.
[7] To the extent Plaintiff conclusorily argues Defendants received or intercepted cable services without authorization after June 10, 2019, this argument is contradicted by Plaintiff's own factual allegations. As discussed above, Plaintiff specifically alleges that on June 10, 2019, the MSOP stopped receiving any cable services. (See, e.g., Compl., [Docket No. 1], at 1, 5–7).

14

any communications service offered over a cable system. Consequently, with regard to Plaintiff's claim under 47 U.S.C. § 553, Plaintiff has patently failed to state a claim upon which relief can be granted.

Therefore, the undersigned recommends that Plaintiff's claims brought pursuant to 47 U.S.C. § 553, as alleged against all Defendants in their official and individual capacities, be **DISMISSED without prejudice**.

### ii. 47 U.S.C. § 605(a)

Section 605 of the Cable Act states in pertinent part: "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person," and it further provides that "[n]o persons not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). The Cable Act further provides that "[a]ny person aggrieved by any violation of subsection (a) . . . of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 605(e)(3)(A).

In the present case, Plaintiff once more wholly fails to plead any factual allegation which raises his § 605(a) claim above pure speculation much less to the requisite level of plausibility. As already observed above, the only receipt of cable communication which Defendants received during the operative time frame was the cable services the MSOP was authorized to receive through its cable services "contract" with Mediacom as acknowledged by Plaintiff in his complaint. (See, Compl. [Docket No. 1]). However, 47 U.S.C. § 605(a) hereto only prohibits the unauthorized receipt or interception of cable services. See, 47 U.S.C. § 605(a).

15

Even liberally construing Plaintiff's Complaint and drawing all reasonable inference therein in Plaintiff's favor, Plaintiff once more fails to allege the unauthorized reception or interception of any cable services as required to plead a claim pursuant to § 605(a). Consequently, with regard to Plaintiff's claim under 47 U.S.C. § 605, Plaintiff has failed to state a claim upon which relief can be granted.

Therefore, the undersigned recommends that Plaintiff's claims brought pursuant to 47 U.S.C. § 605, as alleged against all Defendants in their official and individual capacities, be **DISMISSED without prejudice**.

### 4. State Law Claims

Although not specifically plead, Plaintiff's Complaint might, in a stretch, be construed as also containing certain state law claims. (See, Compl., [Docket No. 1], at 12). For example, Plaintiff refers to an unspecified breach of contract claim (ostensible a breach of the contract between the MSOP and Mediacom), and Plaintiff refers to several state laws which he believes would be violated if he were required to pay the MSOP for cable services. (See, Id.). Presumably, Plaintiff wishes the Court to exercise supplemental jurisdiction over these veiled state law claims.

Supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) by a federal court over state law claims may be exercised at the discretion of the district court. Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 749 (8th Cir. 2009). "[Supplemental jurisdiction] justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id.

16

If it appears that state issues substantially predominate, courts have tended towards dismissing said state law claims without prejudice, to be left for resolution by the state courts. Id.

Because this Court recommends dismissing all of Plaintiff's Federal law claims, at this early stage of this litigation, the Court also recommends that the Court decline to exercise supplemental jurisdiction over any putative state law claims. See, Gregoire v. Class, 236 F.3d 413, 419–20 (8th Cir. 2000) (stating federal courts should exercise judicial restraint and avoid state law issues whenever possible); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

### III. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss, [Docket No. 11], be **GRANTED**, as set forth herein;

2. Plaintiff's 42 U.S.C. § 1983 claims seeking monetary damages as alleged against the Defendants sued in their official capacities be **DISMISSED with prejudice** for lack of subject matter jurisdiction;

3. Plaintiff's 42 U.S.C. § 1983 official capacity claims for injunctive and declaratory relief as alleged against all Defendants be **DISMISSED without prejudice** for lack of subject matter jurisdiction;

4. Plaintiff's 42 U.S.C. § 1983 individual capacity claims for monetary damages, injunctive relief, and declaratory relief as alleged against all Defendants be **DISMISSED without prejudice** for lack of subject matter jurisdiction;

5. Plaintiff's claims brought pursuant to 47 U.S.C. § 553, as alleged against all Defendants in their official and individual capacities, be **DISMISSED without prejudice;**

6. Plaintiff's claims brought pursuant to 47 U.S.C. § 605, as alleged against all Defendants in their official and individual capacities, be **DISMISSED without prejudice**; and

7. The Court decline to exercise supplemental jurisdiction over any putative state law claims.

Dated: November 9, 2020                             s/Leo I. Brisbois
                                                    Hon. Leo I. Brisbois
                                                    United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).